#24739-a-PER CURIAM

**2009 SD 32**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

SCOTT A. MARSHEK,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON  COUNTY, SOUTH DAKOTA

* * * *

HONORABLE A. P. FULLER
Judge

* * * *

LAWRENCE E. LONG
Attorney General

STEVEN R. BLAIR
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.

ARNOLD D. LAUBACH, Jr.
Pennington County Public
Defender's Office
Rapid City, South Dakota                    Attorneys for defendant
                                        and appellant.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 23, 2009

OPINION FILED **05/06/09**

PER CURIAM

## ACTION

[¶1.]      Scott A. Marshek pleaded guilty to one count of Third Degree Burglary.  At the initial sentencing hearing, the circuit court requested that Marshek verify a factual claim he had made.  The circuit court explained to the parties that it would follow the sentence recommendation of the State if the factual claim was true, but would impose a longer sentence if Marshek was lying.  Verification required that the sentencing hearing be continued.  For a variety of reasons, the sentencing hearing was not resumed for several weeks.  Marshek's factual claim was proven false, and the circuit court imposed the longer sentence.

[¶2.]      Marshek appeals.  Based on a statement made by the circuit court during the initial sentencing hearing, he claims that his actual sentence was given at the earlier hearing and could not be modified later.

## FACTS

[¶3.]      In May 2007 Marshek worked for a Rapid City concrete company, when it was discovered that several tools and other items were missing from the company's shop and the owner's home.  Earlier that day, the owner's wife had seen Marshek suspiciously leaving the shop in his pickup.  When Marshek was later stopped by the authorities, he admitted to pawning the tools and other items.

[¶4.]      The State brought several charges against Marshek.  Ultimately, a plea agreement was reached.  In exchange for a plea of guilty to Third Degree Burglary, the State would recommend an eight-year sentence with six years

suspended. The circuit court accepted Marshek's plea and a pre-sentence investigation (PSI) was conducted.

[¶5.] The PSI reported that Marshek claimed to have $190,000 in a Santa Fe, New Mexico bank, among other assets. At the sentencing hearing on November 9, 2007, the circuit court considered restitution requests made by the State on behalf of the victims and the amount of prison time Marshek would be required to serve.

[¶6.] The circuit court's comments about Marshek's sentence form the basis of this appeal. The relevant part of the transcript follows:

> The Court: Well, I'll go with the deal if you tell me the number of the bank account at First National Security Bank in Santa Fe.
>
> Marshek: You'd have to look in my wallet down in evidence. My card is from First National Bank.
>
> The Court: I'm just saying if you can establish – I'm going to follow the plea agreement just like it is, okay, but if that – if you can't establish – and [Marshek's counsel], you'll have to do that through my court service officer or through the state's attorney. If you can establish that you have an account at First National Security Bank in Santa Fe, New Mexico, and that you have at least a hundred thousand dollars in that account, then I'm going with the plea agreement. Because now we know exactly where we're going to get our money to pay off this restitution and whatnot.
>
> And if you don't have an account at First National Security Bank in Santa Fe, New Mexico, with at least a hundred thousand dollars sitting in it, then my sentence is 10 years in the state penitentiary, plus the restitution, the Court costs, the transcript costs, attorney's fees.
>
> So we won't prepare the sentence until we confirm that there is an account at New Mexico, Santa Fe, at the First National Bank and there's a hundred thousand dollars in that account.

> [State's Attorney]: If that is established, we'll attach a copy of that information to the judgment that we send over to the Court for signature?
>
> The Court: Correct. And then I'll go with the plea agreement just as you and the state has stated it to me.
>
> [Marshek's counsel]: Are we scheduling another sentencing date then?
>
> The Court: No, I've given you the alternatives. It's either one or the other.
>
> [Marshek's counsel]: I don't believe the Court can do that.
>
> The Court: Okay. We'll see him later today then. *My sentence is the plea agreement; okay?* And if it turns out he doesn't have an account in Santa Fe, then I guess we'll see him later this afternoon at the convenience of [Marshek's counsel] and the state when I can then sentence him to 10 years in the state penitentiary.

(Emphasis added.)

[¶7.]     The Pennington County Jail was on lock-down later that afternoon and the continued hearing was scheduled for November 14. The evidence was not accessible on November 14 and the proceedings were again delayed. At the November 21 hearing, it was determined that the Santa Fe bank account did not exist. The court sentenced Marshek to ten years in the penitentiary.

[¶8.]     Later, in order to ensure that the record had been preserved for appeal, Marshek filed a motion with this Court asking that the file be remanded. This motion was granted. On June 17, 2008, the circuit court denied Marshek's motion to correct an illegal sentence. Marshek appeals.

## ISSUE

**Whether the circuit court erred in sentencing Marshek to ten years in prison after stating on the record in an earlier hearing, "My sentence is the plea agreement, okay?"**

## ANALYSIS AND DECISION

[¶9.]     Marshek argues that his sentence was imposed when the circuit court said the words, "My sentence is the plea agreement, okay?" on November 9, not when it sentenced him on November 21.  In support of this argument he cites to a number of authorities that hold that the oral sentence is the sentence of the court and that the written sentence must conform to the oral.  *See* State v. Holsing, 2007 SD 72, 736 NW2d 883; State v. Thayer, 2006 SD 40, 713 NW2d 608; State v. Munk, 453 NW2d 124 (SD 1990); State v. Cady, 422 NW2d 828 (SD 1988); State v. Bucholtz, 403 NW2d 400 (SD 1987); State v. Ford, 328 NW2d 263 (SD 1982).  Marshek adds that a valid sentence cannot be enhanced after the defendant has commenced serving the sentence.  *Bucholtz*, 403 NW2d at 403; *Ford*, 328 NW2d at 267.  Because Marshek was held in custody during the time between these hearings, he argues that he had commenced serving the sentence.

[¶10.]     In *Ford,* this Court remanded sentencing when the circuit court increased the defendant's prison term three days after the oral sentence was given.  This Court held that circuit courts have no authority under SDCL 23A-31-1 to increase a sentence after the sentence has been given and the defendant has begun serving his or her term.  328 NW2d at 267.  "[A]s against an unwilling defendant, a valid sentence cannot be increased in severity after he has commenced the serving thereof . . . ." *Id.* (quoting State v. Hughes, 62 SD 579, 584, 255 NW 800, 802 (1934);

- 4 -

State v. Jackson, 272 NW2d 102 (SD 1978); *Ex Parte* Watt, 73 SD 436, 44 NW2d

119 (1950)).  A defendant commences serving the sentence "as soon as the prisoner

suffers some confinement in the custody of a sheriff."  *Id.*

[¶11.]     In *Bucholtz,* an hour after oral sentencing was completed and on the

basis of new information, the circuit court vacated its initial sentence and

resentenced the defendant to a longer prison term.  Again, this Court held that

circuit courts may not increase a sentence after it is given and the defendant has

started to serve the sentence.

[¶12.]     In this case, unlike *Ford* and *Bucholtz,* the circuit court did not

attempt to resurrect a sentence that had already passed.  Here, the circuit court

*continued* proceedings until it was able to obtain additional information about the

character of the defendant and his ability to reimburse the victims for their losses.

> [T]he sentencing judge may exercise wide discretion with respect
> to the type of information used as well as its source.  He should
> have full access to the fullest information possible concerning
> the defendant's life and characteristics.  Information which
> should be available to the court includes general moral
> character, mentality, habits, social environment, tendencies,
> age, aversion or inclination to commit crime, life, family,
> occupation, and previous criminal record . . . .

State v. Thorsby, 2008 SD 100, ¶7, 757 NW2d 300, 302 (quoting State v. Arabie,

2003 SD 57, ¶21, 663 NW2d 250, 257 (quoting State v. Conger, 268 NW2d 800, 801-

02 (SD 1978))).

[¶13.]     As the circuit court observed at the November 21 hearing:

> [I]t is a breach of trust case. . . .  I gave Mr. Marshek an
> opportunity to indicate to me through documentation that he is
> a trustworthy person, and when he tells a court service officer
> facts and circumstances which would have established his trust
> and that this was a rare occasion, that he felt remorse for being
> untrustworthy to this person, I thought this would be a great

opportunity for him to show me that. And what it's doing is it's showing me that he broke a trust with his friend, the victim in this matter, and he has now then broken a trust by not being truthful to a court service officer who was here to give me a recommendation concerning this matter.

[¶14.] In this case, it is inappropriate to consider the circuit court's purported sentence in isolation and out of the context of the rest of the hearing. It was clear to all parties that further information was requested by the circuit court before pronouncing its final sentence. Based on this circumstance, *Ford* and *Bucholtz* are distinguished and the law of those cases is inapplicable.

[¶15.] We note that the circuit court's actions are not this Court's preferred procedure in this situation. The language used by the circuit court does not explicitly state that the sentencing hearing will be continued. However, the statements taken in context and as a whole clearly reflect this intent. We suggest that the circuit courts make efforts to be more specific and overt when continuing a hearing to obtain further information before declaring a final sentence.

[¶16.] Affirmed.

[¶17.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, and SABERS, Retired Justice, participating.