FILED
United States Court of Appeals
Tenth Circuit

May 3, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

ADRIAN LUNA-ACOSTA,

     Defendant-Appellant.

No. 12-2089

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:11-CR-02084-JEC-1)**

---

Margaret A. Katze, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Jennifer M. Rozzoni, Assistant United States Attorney, (Kenneth J. Gonzales, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **BRISCOE,** Chief Judge, **SEYMOUR** and **LUCERO**, Circuit Judges.

---

**BRISCOE**, Chief Judge.

---

     Adrian Luna-Acosta appeals the district court's written judgment imposing

a sentence of thirty-three months' imprisonment, filed five months after the

district court had orally announced a sentence of twelve months' imprisonment. Luna-Acosta argues that the district court lacked jurisdiction under Fed. R. Crim. P 35(a) to modify his twelve-month sentence. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand with instructions to vacate the thirty-three month sentence and file a written judgment consistent with the orally announced sentence of twelve months.[1]

# I

In August 2011, the government filed a one-count information charging Luna-Acosta with illegal re-entry, in violation of 8 U.S.C. § 1326(a) and (b). R. Vol. I at 7. Luna-Acosta subsequently entered a plea agreement under the "fast track" program.[2] Under that agreement, the government agreed to a downward

---

[1] Following oral argument on March 7, 2013, we concluded Luna-Acosta would prevail in his appeal and issued an order March 8, 2013, directing a limited remand for the purposes of releasing him from prison. At that time, we indicated that an opinion would follow.

[2] The so-called "fast track" program allows a defendant, upon motion of the government, to obtain up to a four-level downward departure from his offense level in exchange for pleading guilty pursuant to an early disposition program. See U.S.S.G. § 5K3.1. Federal prosecutors in states bordering Mexico first developed these "fast track" programs in the early 1990s to handle the large number of illegal re-entry and other immigration cases they were prosecuting. United States v. Lopez-Macias, 661 F.3d 485, 486 (10th Cir. 2011). These programs received Congressional approval as part of the PROTECT Act, Pub. L. No. 108-21, 117 Stat. 650 (2003), which directed the Sentencing Commission to promulgate a policy statement authorizing downward departures of up to four levels, upon motion of the government, as part of early disposition programs approved by the Attorney General and the United States Attorney. Lopez-Macias, 661 F.3d at 486-87. The Sentencing Commission has since promulgated U.S.S.G.

(continued...)

departure of Luna-Acosta's final offense level for the purposes of calculating his guideline sentence.  Id. at 11.  In return, Luna-Acosta "agree[d] not to seek any further reduction, departure, deviation, or variance in the Final Adjusted Offense Level or the Criminal History Category, through motion or by argument at sentencing pursuant to 18 U.S.C. §§ 3553(a)(1-7), United States v. Booker, 543 U.S. 220 (2005), or otherwise."  Id. at 13 (emphasis omitted).  He also agreed that he would not appeal "any sentence within the advisory guideline range as determined by the Court."  Id. at 14 (emphasis omitted).  Luna-Acosta subsequently pled guilty in August 2011.

The presentence report (PSR) prepared following Luna-Acosta's plea calculated an offense level of eighteen after factoring in the downward departure set forth in the plea agreement.  R. Vol. II at 5.  The resulting guideline range was thirty-three to forty-one months' imprisonment.  Id. II at 10.  The offense level contained in the PSR was higher than Luna-Acosta had expected.  Luna-Acosta contends that, when the government offered the plea agreement, it told him that it anticipated an adjusted offense level of eight or eleven.  Aplt. Br. at 8.  This would have resulted in a guideline range of at most twelve to eighteen months' imprisonment.  Id.  Luna-Acosta's counsel apparently sent "an informal written objection" to the probation office.  Id. at 10 n.5.

---

[2](...continued)
§ 5K3.1.

3

The district court held a sentencing hearing on October 19, 2011. R. Vol. III at 7. The district court asked whether there was anything the parties wanted to say before sentencing. Id. at 9. Counsel for Luna-Acosta explained to the court the discrepancy between what the government told Luna-Acosta when offering the plea agreement and the offense level that was set forth in the PSR. Counsel argued it would be unfair to sentence Luna-Acosta based on the offense level in the PSR because Luna-Acosta had relied on the government's representation when he entered into the plea agreement. Id. at 10-11.

After reciting the calculations in the PSR and the departure from the plea agreement, the district court said it would impose a sentence of thirty-three months' imprisonment and two years' supervised release. The court did not address Luna-Acosta's argument regarding the higher than anticipated offense level. Id. at 13-14. Defense counsel then noted that new sentencing guidelines would go into effect on November 1, 2011, and they would no longer recommend supervised release in illegal re-entry cases. Id. at 14. Counsel requested that the district court either eliminate the term of supervised release, or "continue the sentencing until after November 1[, 2011]." Id. The district court immediately agreed: "All right. We'll continue it until after November 1." Id. at 15.

The court held a second sentencing hearing on November 16, 2011. Id. at 17. Defense counsel reminded the court that it had continued the hearing until after the new sentencing guidelines went into effect, and that the new guidelines

4

no longer recommended supervised release in illegal re-entry cases. Id. at 19. In addition, while acknowledging that the court "had previously indicated that it was going to sentence my client to 33 months," counsel asked the court to reconsider that sentence "for the reasons in [her] sentencing memo." Id. at 19. Although she used the term "sentencing memo," counsel was actually referring to the informal objection she had sent to the probation office. Aplt. Br. at 10 n.5.

When asked by the court to restate Luna-Acosta's arguments, counsel explained how the government had calculated a higher offense level in the PSR than was represented when it offered the plea agreement. R. Vol. III at 20. Counsel also reiterated that the guidelines no longer recommended supervised release in reentry cases. Id. at 20-21. The court then asked the prosecutor, "Does the government have anything you want to say." Id. at 21. The prosecutor said, "No, Your Honor." Id.

The court then proceeded to sentence Luna-Acosta, saying it had considered the factual findings in the PSR and the 18 U.S.C. § 3553(a) factors. Id. This time, though, the court reduced the sentencing range from thirty-three to forty-one months' imprisonment to twelve to eighteen months' imprisonment. Id. The district court then imposed a sentence of twelve months' imprisonment, without any term of supervised release.

More than five months later, the district court reversed course. Without warning to either party, the district court entered on April 26, 2012, a written

judgment imposing a sentence of thirty-three months' imprisonment without supervised release.[3] R. Vol. I at 30-31. In an accompanying sentencing memorandum, the court explained that it lacked jurisdiction at the November 16 hearing to impose the twelve-month sentence. The court reasoned that it had continued sentencing *only* for the purposes of setting the term of supervised release, and that the thirty-three month sentence imposed on October 19 was a final sentence. Id. at 20-21. The court concluded that Fed. R. Crim. P. 35 was its only potential authority for modifying that sentence, but that by November 16 any sentence modification was time barred under Rule 35(a). The court also said that Luna-Acosta's request for a lower sentence violated the plea agreement. Id. at 21.

The court went on to state that it had always intended to imposed a thirty-three month sentence, although it noted this intention was irrelevant when deciding the question of whether it had jurisdiction to subsequently modify that sentence. Id. at 26. While the court said it was "acknowledg[ing]" its error in re-sentencing the defendant to twelve months' imprisonment, it also noted its large sentencing caseload, the defense attorney's imprecise reference to the "sentencing memorandum," and the fact that "neither attorney adequately apprised [the court] of the circumstances in the Second Hearing [on November 16]." Id. at 21 & n.2.

---

[3] An amended judgment was filed April 27, 2012.

After Luna-Acosta filed his notice of appeal, the government filed a motion to enforce the appellate waiver in the plea agreement. In response, Luna-Acosta argued that his plea agreement allowed him to pursue his appeal because the district court acted without jurisdiction in filing its April 2012 written judgment memorializing a thirty-three month sentence. A three-judge panel of our court denied the government's motion without prejudice in a per curiam order, because "[t]o our knowledge, this court has not addressed whether a defendant can waive in a plea agreement a district court's alleged unauthorized modification of a sentence in violation of Rule 35(a)." United States v. Luna-Acosta, No. 12-2089, at 5 (10th Cir. Sept. 25, 2012).

The government now contends that the entire sentencing was final at the end of the first hearing on October 19, 2011. The government argues that the district court lacked jurisdiction to change *any* part of the sentence after that date unless the court made corrections that fell within the limited circumstances permitted by Rule 35(a). Therefore, the district court acted without jurisdiction when it reduced Luna-Acosta's term of imprisonment and removed the term of supervised release at the November 16 hearing. However, we note that the government does not cross appeal the district court's failure to include the two years of supervised release in its written judgment. Aplee. at 26 n.8. It only asks that we affirm the district court's written judgment imposing thirty-three months' imprisonment.

7

## II

As a threshold matter, we conclude Luna-Acosta did not waive his right to appeal. Under United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004), we must determine "if the disputed appeal falls within the scope of the appellate waiver." A district court's ability to modify a sentence under Rule 35(a) is jurisdictional. See United States v. McGaughy, 670 F.3d 1149, 1158 (10th Cir. 2012). When Luna-Acosta waived the right to appeal his "sentence," he did not waive his right to appeal a judgment entered without jurisdiction. As the Seventh Circuit explained in a similar case:

> The terms of a plea agreement are interpreted according to the parties' reasonable expectations at the time they entered it, and here it seems clear that the parties expected the term 'sentence' to include only the events of the January 24 sentencing hearing, during which the court had jurisdiction to sentence Vega, and not any later attempt by the court to amend Vega's sentence absent jurisdiction.

United States v. Vega, 241 F.3d 910, 912 (7th Cir. 2001) (per curiam) (citation omitted); see also United States v. Lonjose, 663 F.3d 1292, 1301 (10th Cir. 2011) (citing Vega with approval).[4] We agree with the Seventh Circuit's reasoning in

---

[4] The Seventh Circuit also noted that any agreement that purported to waive the defendant's ability to make that argument would have nonetheless been "ineffectual because a defendant cannot confer jurisdiction on a court by way of plea agreement." Vega, 241 F.3d at 912. Cf. United States v. McGaughy, 670 F.3d 1149, 1155 (10th Cir. 2012) ("Subject matter jurisdiction cannot be conferred or waived by consent, estoppel, or failure to challenge jurisdiction early in the proceedings.") (quotation omitted).

<u>Vega</u> and adopt it as our own, concluding this appeal falls outside of the scope of Luna-Acosta's appellate waiver.[5]

## III

We review de novo the district court's determination that it lacked jurisdiction to modify a sentence. <u>United States v. Blackwell</u>, 81 F.3d 945, 947 (10th Cir. 1996). Under Fed. R. Crim. P. 35(a), a district court "may correct a sentence that resulted from arithmetical, technical, or other clear error" "[w]ithin 14 days after sentencing." The rule defines "sentencing" as "the oral announcement of the sentence." Fed. R. Crim. P. 35(c). As stated above, we have held this 14-day time limit is jurisdictional. <u>McGaughy</u>, 670 F.3d at 1158.

The pivotal issue for us to determine is when the "oral announcement" of the sentence occurred for purposes of Rule 35. Once the oral announcement of the sentence becomes final, it can only be modified within the 14 days following sentencing, and even then only in limited circumstances. The district court addressed Luna-Acosta's sentence three different times: twice in open court and finally in a written judgment. These "sentencings" resulted in three different outcomes:

---

[5] The government appears to concede this point, as it only argues we should apply the appellate waiver *if* we agree with it on the merits of the appeal. <u>See</u> Aplee. Br. at 26 ("Because the district court maintained jurisdiction to sentence Luna-Acosta to 33 months imprisonment, his appeal should be dismissed pursuant to the plea agreement's appellate waiver.") (emphasis omitted).

— October 19, 2011 (open court): 33 months' imprisonment, 2 years' supervised release

— November 16, 2011 (open court): 12 months' imprisonment, no supervised release

— April 26, 2012 (written judgment): 33 months' imprisonment, no supervised release

In its April 26 ruling, the district court held that the sentence of imprisonment was final after the first hearing, but that the sentence of supervised release was not final until after the second hearing. Luna-Acosta argues that neither part of the sentence was final until the end of the second hearing. The government argues that both parts of the sentence were final at the end of the first hearing.

As an initial matter, Rule 35 does not conclusively answer the question presented. Rule 35(c) defines sentencing as "the oral announcement of the sentence," nothing in the rule requires or suggests that whatever term or terms of imprisonment the district court first utters during a hearing is to be treated as the sentence for purposes of the rule. Treating the "sentence" as the oral announcement "is grounded in the Sixth Amendment which requires that a defendant be physically present at sentencing." United States v. Townsend, 33 F.3d 1230, 1231 (10th Cir. 1994). A 2004 amendment added this definition to the rule to make clear that the time for modification under Rule 35(a) runs from the oral announcement of a sentence, as opposed to from the filing of the written judgment. Fed. R. Crim. P. 35 advisory committee's note ("After further

10

reflection, and with the recognition that some ambiguity may still be present in using the term 'sentencing,' the Committee believes that the better approach is to make clear in the rule itself that the term 'sentencing' in Rule 35 means the oral announcement of the sentence."). Courts had been divided on this issue prior to this clarification. Id.

Although our court has not addressed the issue of what constitutes the "oral announcement of the sentence," the Fifth Circuit has held that a sentence is not final—and Rule 35(a) does not apply—when there is "no formal break in the proceedings from which to logically and reasonably conclude that sentencing had finished." United States v. Meza, 620 F.3d 505, 509 (5th Cir. 2010). In Meza, the district court orally announced a sentence before learning from defense counsel that the guideline sentence had been improperly calculated. The district court then promptly revised the guideline calculation and announced a new sentence. Id. at 506-07.

In Meza, the Fifth Circuit concluded that the district court's change of a sentence immediately after it first announced a sentence was not a modification that must comply with Rule 35(a). The court refused to impose the "draconian rule" that "the district court's initial formulation of the sentence is the type which *instantaneously* strips the district court of its jurisdiction to sentence criminal defendants and *immediately* vests such jurisdiction with this court." Id. at 508. The Fifth Circuit said that the party's application for modification had come

11

"within the same hearing, on the same day, within moments of the original pronouncement." Id. "The unbroken sequence of actions in this case . . . counsels in favor of affirming the judgment and sentence of the district court and construing the totality of the events as one sentence." Id.; see also United States v. Gerezano-Rosales, 692 F.3d 393, 397 (5th Cir. 2012) (holding district court had jurisdiction to alter sentence when "the court changed its initial formulation before it adjourned the sentencing hearing"); United States v. Burgos-Andújar, 275 F.3d 23, 30-31 (1st Cir. 2001) (initial announcement of sentence only "tentative" when court permitted defendant to continue her allocution).

We view the Fifth Circuit's conclusion as reasonable given the practical realities of sentencing. That view is further bolstered by our precedent regarding the preservation of errors for appellate review. We have held that in order to preserve a sentencing issue for appellate review defendants must first raise in district court even those procedural objections that cannot be raised until after the district court has announced its sentence, such as the failure to adequately explain a sentencing decision. United States v. Gantt, 679 F.3d 1240, 1247 (10th Cir. 2012) ("To preserve that complaint for appeal, Defendant needed to alert the court that its explanation was inadequate, which ordinarily would require an objection after the court had rendered sentence."). Requiring a defendant to first raise such issues after the sentence is imposed provides the district court with an opportunity to correct errors before, and perhaps in lieu of, appellate review. Id.

12

Our requiring the defendant to raise the procedural objections after sentencing, but before appeal, would be meaningless if a district court could not—even if it or one of the parties caught a mistake seconds after it was made—correct its initial oral announcement except for the limited circumstances listed in Rule 35(a). In light of this precedent, we adopt the Fifth Circuit's standard for determining when an oral announcement becomes a "sentence" for the purposes of Rule 35(a).

Applying this "formal break" standard to the case at bar, we conclude that the sentence was not final until the end of the second hearing held on November 16, 2011. Most important is the very fact the district court *continued* the first hearing on October 19 without finalizing all of the terms of the sentence. Cf. United States v. Ross, 557 F.3d 237, 238 (5th Cir. 2009) (applying limits of Rule 35(a) when district court *sua sponte* scheduled a second hearing after initial sentencing hearing had concluded). At that point, the parties had not had the opportunity to raise any other objections, and Luna-Acosta had not had an opportunity to allocute. These circumstances all suggest the oral announcement of the sentence was not yet final.

Indeed, although the district court stated in its April 26 ruling that it intended to continue the sentencing *only* as to the term of supervised release, it is not clear how the parties would have been aware of that at the time the first hearing ended on October 19. At the October 19 hearing defense counsel raised the issue of supervised release immediately after the district court announced a

13

sentence. The district court agreed to continue the sentencing hearing to a later date and the hearing ended. Further, the district court did not state that it was limiting the second hearing to the determination of whether or not supervised released would be imposed:

> [Counsel]: Your Honor, I'm sorry. Would the Court reconsider the supervised release? Because in less than two weeks, there won't be supervised release for reentry cases.
>
> THE COURT: Tell me again what you're saying. I know about what's happening.
>
> [Counsel]: Right. But it's going to happen on November 1, so it's like a week and a half, and I just think that given that we know that's going to happen, the disparity of treatment, that he happened to be getting sentenced a week before that, I'm asking you not to give him supervised release.
>
> Or continue the sentencing until after November 1.
>
> THE COURT: All right. We'll continue it until after November 1.
>
> [Counsel]: Okay. Thank you.
>
> THE COURT: Yes.
>
> [Counsel]: Thank you.
>     (Proceedings concluded at 10:30 a.m.)

R. Vol. III at 14-15. Based on our review of the transcript, the parties could not have known at the time the October 19 hearing ended that they would be barred from raising any other objections. But see District Court Sentencing Memo, ROA Vol. I at 20-21 ("Given the colloquy post-sentence during the First Hearing, it is

14

clear that *all* present, including Defendant, understood me to be continuing the hearing in order to reconsider *only* the supervised release and not the 33-month term of imprisonment that I imposed.").  Thus, even it were possible for the district court to finalize only part of a sentence at the hearing—a proposition neither the government nor the defendant supports—the transcript does not indicate that the court intended to finalize the term of imprisonment while leaving the term of supervised release open.

The government attempts to distinguish the circumstances in this case from cases such as <u>Meza</u> by arguing that those cases "all involve a change of a sentence that occurred during one continuous hearing held on one single day." Aplee. Br. at 21-22.  But the government fails to explain why the end of the day would serve as a logical, formal break in this case, where the district court, without any objection, decided to continue the sentencing hearing to a later date. Moreover, the government's approach would seemingly force a district court to finalize a sentence in a single day—even if the defendant raised at the hearing a post-sentencing objection that required additional research and contemplation by the district court.

The government also argues that the failure of the district court to offer Luna-Acosta the opportunity to allocute should not determine whether or not the sentence was finalized for the purposes of Rule 35(a).  The government points out that Luna-Acosta did not allocute at the second hearing either.  If this were

15

crucial in determining finality, the government says, the second sentence would also remain open.

But that misunderstands Luna-Acosta's argument. He is not arguing that the absence of allocution always prevents the oral announcement of a sentence from becoming final. Rather, he argues that the absence of allocution should be among the facts considered when deciding whether the oral announcement on October 19 resulted in a final sentence. And, here, the totality of the circumstances suggest that the sentencing was not yet complete at the end of the hearing on October 19.

**IV**

Because the sentence was not final for the purposes of Fed. R. Crim. P. 35(a) at the end of the first hearing on October 19, the district court had jurisdiction to impose the twelve-month sentence at the second hearing on November 16. However, the district court lacked jurisdiction under Rule 35(a) when it altered that twelve-month sentence of imprisonment in its written judgment on April 26. We REVERSE and REMAND with instructions for the district court to vacate its written judgment of April 26, 2012, and enter a new judgment consistent with the November 16, 2011, sentencing.