#28407-a-GAS, JMK
**2018 S.D. 59**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                        Plaintiff and Appellee,

    v.

SHAWN RAYNARD ROSS,                        Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
BRULE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE BRUCE V. ANDERSON
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

GRANT FLYNN
Assistant Attorney General
Pierre, South Dakota                        Attorneys for plaintiff
                                             and appellee.

DOUGLAS N. PAPENDICK of
Stiles, Papendick & Kiner
Mitchell, South Dakota                        Attorneys for defendant
                                             and appellant.

\* \* \* \*

ARGUED ON APRIL 17, 2018
OPINION FILED **07/25/18**

SEVERSON, Retired Justice, and KERN, Justice.

[¶1.]     After the defendant pleaded guilty to third-degree burglary as part of a plea agreement, the court sentenced the defendant to five years in prison with three and one-half years suspended.  The defendant left counsel's table accompanied by the sheriff.  Before exiting the courtroom, the defendant made an obscene hand gesture toward the court.  The court summoned the defendant back to counsel's table and resentenced him, imposing the entire five-year term.  Before the court entered a judgment of conviction, the defendant filed a pro se motion for resentencing.  The court entered a judgment of conviction but also granted a resentencing hearing.  After the hearing, the court imposed a 60-month sentence with 40 months suspended.  The defendant appeals, asserting that the sentencing court was without authority to increase his punishment beyond the court's initial sentence of five years with three and one-half years suspended.  We affirm.

### Background

[¶2.]     On February 17, 2017, the Brule County Grand Jury indicted Shawn Ross on one count of third-degree burglary in violation of SDCL 22-32-8 and one count of intentional damage to property in violation of SDCL 22-34-1(2).  Ross pleaded not guilty.  Thereafter, the State and Ross entered into a plea agreement.  At a hearing on May 16, 2017, pursuant to the plea agreement, Ross pleaded guilty to third-degree burglary and agreed to pay $2,887.21 in restitution.  The circuit court accepted Ross's plea and set a sentencing hearing for June 13, 2017.

[¶3.]     At the sentencing hearing, Ross represented himself, although the sentencing court appointed advisory counsel.  Before imposing sentence, the court

relayed that it had previously accepted Ross's plea, found a factual basis to support the plea, and ordered a presentence investigation (PSI). The court asked Ross if he had reviewed the PSI. Ross replied that he reviewed it and had nothing to add or change. He also agreed that the PSI contained "all the information the [c]ourt needs to know in sentencing [him] today[.]" The State did not offer evidence in aggravation, and Ross did not present evidence in mitigation. Ross also chose not to make a statement. The transcript indicates that advisory counsel whispered to Ross. Thereafter, Ross requested and received credit for time served. Counsel again whispered to Ross, and Ross asked the court to waive the fine and costs, which the court granted.

[¶4.] After addressing those preliminary matters, the court asked whether either party was "aware of any just or legal cause why sentencing cannot be pronounced?" Ross and the State responded in the negative. The court continued:

> All right. Mr. Ross, you have a pretty extensive record. You've done some federal time and some state time before. This again is another serious felony offense. So it requires some prison time, but it's not the crime of the century. And I don't look at it as such.
>
> So what the [c]ourt's ordering is that due to your financial situation, I find hardship. There will be no fines or costs ordered.
>
> I'm ordering you to serve five years in the South Dakota State Penitentiary, there to be fed, kept, and clothed in accordance with the rules governing said institution. I'm suspending three and a half years. I'm giving you credit for 133 days served.
>
> I'm not too sure where your parole eligibility percentage falls. I suspect that you may be eligible for parole the day you step into prison. But you've been there before, so you probably know more about the 60-day minimum rule. And that's really what I'm looking at, if there's a few extras, that's fine. But I think that's an appropriate sentence.

I'm ordering that as a condition of your parole, you will pay restitution of $2,887.21 to the victim as laid out in the PSI. That'll be spread out in the judgment, Mr. Natvig, as far as the name.

You'll be remanded to the custody of the sheriff for execution of the sentence. You'll probably be transported later this week. And like I said, I don't think it's a very long sentence. I consider you to have substantially served the sentence already in the county jail, so I am not trying to add a bunch more on to that, okay?

**Defendant**: Yeah, well, I, I'll be doing way more time than that.

**Court**: Why?

**Defendant**: Because of the percentage of the, percentage of when you go to jail, when you go to prison you got - - I have two felonies, prior felonies. This will make it I'll have to do 45, 50 percent after that, credit after that time.

**Court**: So the year and a half - -

**Defendant**: Yep.

**Court**: - - and then credit? It's still not that long.

**Defendant**: I'm still going to do another six, seven months.

**Court**: Well. That's my sentence. That concludes the matter.

The transcript indicates that Ross left counsel's table. It is undisputed that Ross left counsel's table with the deputy sheriff.

[¶5.] After Ross left counsel's table, counsel for the State and counsel advising Ross each asked the sentencing court a question. Although Ross was representing himself, counsel advising Ross asked the court, "Judge, is there a certain amount - - never mind - - probationary period, or?" The following exchange occurred:

**Court**: It's prison. It's for parole.

**Counsel advising Ross**: Parole, okay.

**Court**: Yep. It's five years total. They can cut him short if they decide that's necessary.

**Counsel advising Ross**: Okay. Thank you.

> **State**: Court appointed attorney fees?
>
> **Court**: He's ordered to repay the Court appointed attorney fees.

[¶6.] Thereafter, the court said, "What? Wait. Did you just flip me off? Stop." The following exchange transpired:

> **Deputy Sheriff**: Ross (indicating).
>
> **Court**: Stop. Did you just flip me off?
>
> **Defendant**: I don't know what, you seen what I did.
>
> **Court**: Did you? Sit down. Come back here and sit down (indicating). Right now. (The Defendant complies.)
>
> **Court**: For the record, the [c]ourt observed Mr. Ross flip [it] the bird as he was leaving the courtroom. For that reason, the [c]ourt is modifying its sentence. The [c]ourt is reimposing the three and a half years suspended. It's five years in prison.
>
> **Defendant**: Thank you. I'll get my day, same to you.
>
> **Court**: For that I'm holding you in contempt of court. You'll be held in the Brule County jail for 30 days before you go and start your prison without any credit.
>
> **Defendant**: Well give me a year, I don't care. Do what you got to do.
>
> **Court**: Now it's 60 days in the Brule County jail before you start your prison sentence without any credit. Anything more to say?
>
> **Defendant**: Uh-huh. I got a lot to say. You'll hear about it when I file, when I file my paperwork.
>
> **Court**: File your paperwork.
>
> **Defendant**: Uh-huh.
>
> **Court**: That's it. Take him to jail immediately.

The deputy sheriff escorted Ross out of the courtroom.

[¶7.] On July 11, 2017, Ross, acting pro se, filed a motion to withdraw his guilty plea and/or appeal his sentence. He also filed a motion for resentencing. The court had not yet entered a judgment of conviction on the charge of third-degree burglary. The court also had not yet entered an order on the contempt charge. On July 20, the circuit court issued findings of fact and conclusions of law and an order

of contempt. The court ordered that Ross "serve an additional 30 days in the Brule County Jail for contempt of court [in] accordance with SDCL 23A-38-1." The court also entered a judgment of conviction on the charge of third-degree burglary and imposed a five-year sentence.

[¶8.] In regard to Ross's pro se motions, the court denied Ross's motion to withdraw his guilty plea. The court granted Ross's motion for resentencing. In the order granting the request to be resentenced, the court cited SDCL 23A-27-19 as authority to modify Ross's sentence. The court concluded that Ross "should be allowed another opportunity with substitute counsel to present his case for a possible different sentence." On August 14, 2017, the court appointed counsel to represent Ross.

[¶9.] On September 5, 2017, the court held a resentencing hearing. Ross appeared with court-appointed counsel. The court recognized that Ross had submitted a letter of apology and that the court accepted the apology. During the hearing, counsel for Ross argued that the sentencing court was without authority to increase Ross's sentence after the court had announced the sentence and remanded Ross to the custody of the sheriff. Therefore, counsel requested that the court reimpose the original sentence: five years with three and one-half years suspended. The court responded that it "thought about giving [Ross] the same time sentence" but determined that it would not. The court ordered that Ross serve 60 months in the penitentiary with 40 months suspended and credit for 194 days served. The court also ordered that Ross reimburse the court appointed attorney fees and pay

restitution as previously ordered. The court entered an amended judgment of conviction imposing the same.

[¶10.]    Ross appeals, and we restate his issues as follows:

1.  Whether the sentencing court improperly increased Ross's sentence.

2.  Whether the sentencing court improperly increased Ross's sentence after the resentencing hearing.

### Analysis

**KERN, Justice, writing the opinion on Issue 1.**

### 1. Increased punishment during initial sentencing

[¶11.]    Ross argues that the sentencing court was without authority to increase his punishment because the court had orally pronounced a valid sentence and remanded Ross to the custody of the sheriff. Ross directs this Court to our well-established rule that "[a]s against an unwilling defendant, a valid sentence cannot be increased in severity after [the defendant] has commenced serving thereof." *State v. Marshek*, 2009 S.D. 32, ¶ 10 765 N.W.2d 743, 746; *State v. Ford*, 328 N.W.2d 263, 267 (S.D. 1982); *accord State v. Jackson*, 272 N.W.2d 102, 104 (S.D. 1978); *Ex parte Watt*, 73 S.D. 436, 445, 44 N.W.2d 119, 124 (1950). In response, the State asserts that the sentencing court had authority to modify Ross's sentence because Ross had not yet commenced serving his sentence when he gestured obscenely at the circuit-court judge. We note that extending one's middle finger "is an obscene or vulgar gesture." *In re Fuller*, 2011 S.D. 22, ¶ 20 n.3, 798 N.W.2d 408, 413 n.3.

[¶12.]     In *Ford*, we examined whether a sentencing court could increase an orally pronounced sentence three days after it was imposed. 328 N.W.2d at 266-67. On appeal, Ford argued that the sentencing court lacked authority to increase his sentence because he commenced serving his sentence once he had been remanded to the custody of the sheriff. *Id.* at 267. The State responded that Ford had not yet commenced serving his sentence because Ford had not been transported to the penitentiary; he was in custody at the county detention center. *Id.* The State further argued that the sentencing court's oral sentence was not a valid judgment until it became a signed, written judgment. *Id.*

[¶13.]     We held that a "sentence commences as soon as the prisoner suffers some confinement in the custody of a sheriff." *Id.* In regard to Ford, we recognized that after the court pronounced its oral sentence, Ford "was immediately remanded to the custody of the county sheriff and returned to the county detention center until being transferred to the State Penitentiary." *Id.* Therefore, we held that although Ford had not yet been transferred to the penitentiary, "Ford commenced serving his sentence immediately after the oral sentence of October 5." *Id.* We further held that Ford commenced serving his sentence even though "the oral sentence of October 5 was not reduced to a written judgment at that time[.]" *Id.* at 268.

[¶14.]     In *State v. Bucholz*, we likewise held invalid an increase in a defendant's sentence. 403 N.W.2d 400, 403 (S.D. 1987). In *Bucholz*, the sentencing court had imposed its sentence and remanded Bucholz to the custody of the sheriff at the close of the sentencing hearing. *Id.* at 401. Approximately one hour later,

the court learned that Bucholz had been seen in a state of intoxication within two weeks prior to sentencing, contrary to Bucholz's previous assertions to the court. *Id.* In response, the court brought Bucholz back to the courtroom and resentenced him. *Id.* at 402. Relying on *Ford,* we held that the court could not increase Bucholz's sentence because Bucholz was in confinement at the time the court increased his sentence. *Id.* at 403.

[¶15.] More recently, in *Marshek*, we reiterated the law in this State "that circuit courts may not increase a sentence after it is given and the defendant has started to serve the sentence." 2009 S.D. 32, ¶ 11, 765 N.W.2d at 746. On appeal, Marshek argued that the circuit court imposed a valid sentence when it said, "My sentence is the plea agreement, okay," and therefore, could not increase the sentence during a subsequent sentencing hearing. *Id.* ¶ 9. But this Court's review of the transcript from the sentencing hearing revealed that although the sentencing hearing had ended and the defendant had left the courtroom in the custody of the sheriff, the court did not impose its sentence. We determined that the "circuit court *continued* proceedings until it was able to obtain additional information about the character of the defendant and his ability to reimburse the victims for their losses." *Id.* ¶ 12. Therefore, we distinguished the case from *Ford* and *Bucholz* and upheld Marshek's sentence. *Id.* ¶¶ 14-16, 765 N.W.2d at 747.

[¶16.] We also distinguished *Ford* and *Bucholz* in *Lykken v. Class*, 1997 S.D. 29, 561 N.W.2d 302. In *Lykken,* the sentencing court imposed four separate sentences but did not state whether the rape and kidnapping sentences were to run concurrently or consecutively. *Id.* ¶ 8, 561 N.W.2d at 305. "Within fifteen minutes

of the court's oral pronouncement of this sentence and before any of the parties and their attorneys had left the courtroom, the trial court reconvened court and corrected the sentence, stating that the rape and kidnapping sentences were to run consecutively." *Id.* ¶ 9 (footnote omitted). We held that the court's clarification was authorized under SDCL 23A-31-2 as a correction of a clerical error. *Id.* ¶ 10, 561 N.W.2d at 305-06; *accord Litschewski v. Dooley*, 792 F.3d 1012, 1017 (8th Cir. 2015) (holding that courts are permitted to correct a clerical error after initial sentencing).

[¶17.] Several federal appellate courts have examined this question, analyzing when a sentence becomes binding and concluding that finality attaches to a district court's initial sentence when there has been a "break in the proceedings" but not before. In *United States v. Gerezano-Rosales*, the Fifth Circuit Court of Appeals upheld a district court's change to an orally pronounced sentence made moments after the initial sentence was imposed. 692 F.3d 393, 397 (5th Cir. 2012). After the district court orally pronounced the defendant's sentence, the court discovered that the defendant spoke English despite representing otherwise. *Id.* at 396. The district court then doubted other representations made by the defendant and resentenced the defendant to a greater term of imprisonment. *Id.* The Fifth Circuit Court of Appeals held that the district court's initial "sentence did not constitute a binding sentence and therefore did not strip the court of jurisdiction to change its initial formulation" because "there was 'no formal break in the proceedings from which to logically and reasonably conclude that sentencing had finished.'" *Id.* (quoting *United States v. Meza*, 620 F.3d 505, 509 (5th Cir. 2010)).

[¶18.]     The Ninth Circuit Court of Appeals similarly refused to adopt a "draconian" rule that "would carve the district court's initial pronouncement of sentence in stone, preventing the court from revising the sentence in light of new developments during the hearing." *United States v. Ochoa*, 809 F.3d 453, 458 (9th Cir. 2015). To conclude otherwise, according to the appeals court, "would strip district courts of flexibility to respond to evolving circumstances during sentencing hearings." *Id.* Thus, in the Ninth Circuit, a district court has authority to alter a sentence during the same proceeding. *Id.*

[¶19.]     Similarly, the Tenth Circuit Court of Appeals considered "the practical realities of sentencing" and deemed "reasonable" the conclusion that an oral sentence may be modified so long as "there is 'no formal break in the proceedings from which to logically and reasonably conclude that sentencing had finished.'" *United States v. Luna-Acosta*, 715 F.3d 860, 865 (10th Cir. 2013) (quoting *Meza*, 620 F.3d at 509). The court then held that the district court had authority to modify its sentence from one hearing to the next because there had been no "formal break" in the proceedings when at the conclusion of the first hearing, the district court continued sentencing without finalizing all the terms of the sentence. *Id.* at 866.

[¶20.]     We adopt the view that each case must be resolved individually by examining whether there was a "formal break in the proceedings from which to logically and reasonably conclude that sentencing had finished." *Gerezano-Rosales*, 692 F.3d at 397. Justice Severson's writing suggests departing from the test promulgated in *Gerezano-Rosales*, *Ochoa*, and *Luna-Acosta*; instead, it proposes a bright-line rule that a defendant can be resentenced so long as they remain in the

courtroom, but not after. As Justice Severson's writing observes, a defendant possesses a "protected expectation of finality in sentencing." Concurrence ¶ 29. Yet Justice Severson would hold that an expectation of finality cannot attach until after the defendant leaves the courtroom. However, such a bright-line rule fails to account for a defendant's legitimate expectation of finality.

[¶21.]     Further, Justice Severson's writing provides insufficient justification for the creation of a bright-line rule. It claims that "determin[ing] finality on a case-by-case basis" will "perpetuate uncertainty" and that "the bright-line rule accounts for the judge's authority to control the courtroom and affords a judge the ability to respond to 'evolving circumstances during sentencing hearings.'" Concurrence ¶ 30. Justice Severson arrives at this conclusion following "a review of authorities from other jurisdictions," *id.*, despite the fact that these courts utilize a case-by-case approach. Nonetheless, judges do not possess unfettered control over the courtroom: the contours of the Constitution cabin a judge's authority. While we must afford judges flexibility, we cannot do so at the expense of the constitutional protections afforded to defendants.

[¶22.]     Moreover, as the Wisconsin Supreme Court explained in reaffirming an approach examining the circumstances of the individual case:

> On the one hand, it is unacceptable for the defendant's sentence to be seen as a work in progress that a circuit court can add to or subtract from at will. . . . On the other hand, a circuit court should not be tethered in every instance to a sentence that is based on a mistake of law, mistake of fact, or inconsistent with the court's intent. "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner."

-11-

*State v. Robinson*, 847 N.W.2d 352, 364 (Wis. 2014) (citations omitted) (quoting

United States v. DiFrancesco, 449 U.S. 117, 135, 101 S. Ct. 426, 426, 66 L. Ed. 2d

328 (1980)). Thus, the Wisconsin Supreme Court concluded, "[i]n cases such as

these, a bright line rule is simply unworkable," and a determination whether a

legitimate expectation of finality exists requires an "inquiry that rests largely on

the facts of each individual case." *Id.*

[¶23.]       Even if a formal break in the proceedings always results after the

sheriff escorts the defendant out of the courtroom, *see State v. Bucholz*, 403 N.W.2d

at 403, that does not mean a formal break cannot occur before the defendant crosses

the threshold. *See Ford*, 328 N.W.2d at 267 (holding that the defendant

"commenced serving his sentence *immediately* after the oral sentence" (emphasis

added)); *Meza*, 620 F.3d at 508-09 (distinguishing an unpublished case where "the

modification . . . happened after [the] sentencing judge gaveled the hearing

adjourned"). To hold otherwise overlooks "the practical realities of sentencing."

*Luna-Acosta*, 715 F.3d at 865.

[¶24.]       For example, courts often schedule sentencing hearings in a block on

the calendar. Multiple in-custody defendants are transported to the courtroom

together. After an individual defendant has received his sentence, he may be

detained in the courtroom for several hours while other defendants appear before

the court for their scheduled hearing. The attorneys for both the defendant and the

State that are handling the individual case may leave the courtroom after

sentencing while the defendant stays. Thus, the defendant remains not for any

purpose related to sentencing, but for logistical reasons like the availability of

deputies to transport prisoners to and from the jail. As Justice Severson observes, it is true that "[e]xactly what time span is needed between the initial imposition of the sentence and the modification to create a protected expectation of finality is unclear." Wayne R. LaFave, *Resentencing by the Trial Judge*, 6 Crim. Pro. § 26.7(c) (4th ed.) (December 2017 update). However, a bright-line rule will not account for the many scenarios that could lead a defendant to "reasonably conclude that sentencing had finished." *Gerezano-Rosales*, 692 F.3d at 397.

[¶25.] In the present case, the court announced, "Well. That's my sentence. That concludes the matter." The sheriff subsequently led Ross away from counsel's table. However, counsel remained, seeking clarification about the sentence when the defendant displayed his obscene gesture. These facts resemble *Ochoa*. There, the district court imposed an additional year after noticing the defendant—who the judge had noted was disrespectful and demonstrated disregard for the law—was laughing after receiving his sentence while his counsel sought clarification about whether the defendant's supervision was terminated. *Ochoa*, 809 F.3d at 455-56. The Ninth Circuit Court of Appeals affirmed the lower court's determination that there was not yet a formal break in the proceedings. *Id.* at 459. Rejecting the defendant's argument that the court could not reformulate its sentence after orally pronouncing it, the court stated:

> The rule [defendant] advocates would strip district courts of flexibility to respond to evolving circumstances during sentencing hearings. Here, for example, [defendant's] laughter signaled to the district court that [defendant's] lack of interest in cooperating with those tasked with his rehabilitation was as severe as the court originally contemplated when remarking that the recommended sentence of twelve months and a day "seem[ed] . . . way too low."

*Id.* at 458. Like *Ochoa*, the court here had not dismissed the attorneys. Further, the court had not called the next case, and Ross had not left the courtroom. Under these circumstances, no formal break in the proceedings occurred, and Ross could not logically and reasonably conclude otherwise. Accordingly, the circuit court had the authority to modify Ross's sentence.

[¶26.] ZINTER and JENSEN, Justices, concur.

**SEVERSON, Retired Justice, concurring in result on Issue 1.**

[¶27.] Here, the parties do not dispute that the sentencing court intended to and did impose a valid five-year sentence with three and one-half years suspended. Indeed, after Ross made certain comments to the court concerning the amount of time he would have to serve, the court reiterated, "Well. That's my sentence." The court then stated, "That concludes the matter." Although counsel asked the sentencing court additional questions, Ross was representing himself and had left counsel's table in the custody of the sheriff. Moreover, the questions did not change the intended finality of the court's sentence. Therefore, this case is unlike *Lykken* or *Marshek*, and the sentencing court imposed a valid sentence.

[¶28.] The question, then, is whether Ross commenced serving his sentence prior to the court's decision to modify it. It is undisputed that Ross had not yet left the courtroom, which distinguishes this case from *Ford* and *Bucholz*. Likewise, the court had not adjourned Ross's sentencing hearing. But in *Ford,* we said that a "sentence commences as soon as the prisoner suffers some confinement in the custody of a sheriff." 328 N.W.2d at 267. And, here, the court said, "That concludes the matter," and Ross left counsel's table accompanied by a sheriff. Does this mean

that Ross commenced serving his sentence? Or would the sheriff need to escort Ross from the courtroom before Ross suffers confinement?

[¶29.]     As one commentator noted, "[e]xactly what time span is needed between the initial imposition of sentence and the modification to create a protected expectation of finality is unclear." LaFave, supra, at ¶ 24. Long ago, the United States Supreme Court explained that the protected expectation of finality in sentencing has its roots in the double jeopardy clause. *Ex parte Lange*, 85 U.S. 163, 173, 21 L. Ed. 872 (1873). The Court identified that the double jeopardy clause must "prevent the criminal from being twice punished for the same offence [sic] as [much as] from being twice tried for it." *Id.* Indeed, "[f]or of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict?" *Id.* Therefore, a court does not have the power to increase a defendant's sentence after an expectation of finality attaches because "to increase the penalty is to subject the defendant to double punishment for the same offense in violation of the Fifth Amendment to the Constitution[.]" *United States v. Benz*, 282 U.S. 304, 307, 51 S. Ct. 113, 114, 75 L. Ed. 354 (1931).

[¶30.]     From this Court's past cases and a review of authorities from other jurisdictions, I would hold that a sentencing court may not, against an unwilling defendant, increase the severity of a valid sentence after the defendant leaves the courtroom in the custody of the sheriff. Rather than determine finality on a case-by-case basis and perpetuate uncertainty, I find persuasive the bright-line rule that sentencing has concluded when a court imposes a valid sentence and a defendant

leaves the courtroom in the custody of the sheriff. Indeed, it is clear that a defendant's expectation of finality attaches and double jeopardy protections are implicated at that point. *See id.* Moreover, the bright-line rule accounts for the judge's authority to control the courtroom and affords a judge the ability to respond to "evolving circumstances during sentencing hearings." *See Ochoa,* 809 F.3d at 458. Because, here, the sentencing court altered its original sentence before Ross had left the courtroom in the custody of the sheriff, Ross's expectation of finality had not attached, and the circuit court did not violate Ross's right to be free from double jeopardy.

[¶31.] GILBERTSON, Chief Justice, concurs.

**SEVERSON, Retired Justice, writing the opinion on Issue 2.**

### 2. Resentencing hearing

[¶32.] Although the sentencing court had authority to alter Ross's sentence during the original sentencing hearing, we must nevertheless address the effect of the resentencing hearing. Following the first hearing, but before the court issued its written judgment of conviction, Ross filed a pro se "motion to resentencing notice of hearing." On July 21, 2017, the sentencing court issued a written decision granting Ross's motion for resentencing. The court cited SDCL 23A-27-19 as authority.

[¶33.] At the resentencing hearing on September 5, 2017, counsel for Ross asserted that the court was without authority at the initial sentencing hearing to increase Ross's punishment. The court disagreed, asserting its right to modify the

sentence "when somebody flips the bird to the [c]ourt." Counsel requested that the court hand down the original sentence it had imposed.

[¶34.]　　　　When pronouncing its sentence, the court remarked on its previous experience with Ross at the magistrate level. The court informed Ross that at the initial sentencing it had intended to give him a benefit despite Ross being convicted of a serious charge. The court then explained: "[B]ut you can't flip any judge the bird ever. It doesn't turn out well. And [the court] thought it's important that that be pointed out to [Ross] in a very strong way." The court remarked that it had "thought about giving [Ross] the same sentence" and decided it would not. The court also said that it would not impose the maximum punishment of five years. Based on the court's history with and knowledge of the defendant along with "what happened," the court ordered Ross to serve 60 months in prison with 40 months suspended.

[¶35.]　　　　Under SDCL 23A-27-19, "[t]he sentencing court retains jurisdiction for the purpose of suspending any sentence for a period of two years from the effective date of the judgment of conviction, notwithstanding the fact that the time for an appeal from such judgment is limited to a shorter period of time." Because the sentencing court had the authority—at the initial sentencing hearing—to modify its orally pronounced sentence and impose a five-year sentence, the court properly relied on SDCL 23A-27-19 to reduce Ross's five-year sentence to a sentence of 60 months with 40 months suspended.

[¶36.]　　　　Alternatively, Ross claims that the sentencing court abused its discretion when it imposed a 60-month sentence with 40 months suspended. It is

well established that courts have broad discretion when fashioning an appropriate sentence.  In sentencing the defendant, a court is required to "acquire a thorough acquaintance with the character and history of the [person] before it." *State v. Lemley*, 1996 S.D. 91, ¶ 12, 552 N.W.2d 409, 412 (quoting *State v. Chase in Winter*, 534 N.W.2d 350, 354 (S.D. 1995)).  From our review, the court did not abuse its discretion.  Because the sentencing court had authority to alter its original sentence during the initial sentencing hearing and because Ross has not established that the sentencing court abused its discretion in imposing a sentence of 60 months with 40 months suspended, we affirm.

[¶37.]     GILBERTSON, Chief Justice, and ZINTER, KERN, and JENSEN, Justices, concur.

[¶38.]     SALTER, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.