**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-4654**

UNITED STATES OF AMERICA,

Respondent – Appellee,

v.

JOEL MATTHEW COVINGTON,

Petitioner – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:21-cr-00291-BO)

Argued:  December 9, 2022                                   Decided:  April 26, 2023

Before RICHARDSON, QUATTLEBAUM, and HEYTENS, Circuit Judges.

Affirmed by published opinion.  Judge Richardson wrote the opinion, in which Judge Quattlebaum and Judge Heytens joined.

**ARGUED:**  Andrew DeSimone, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  David A. Bragdon, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Michael F. Easley, Jr, United States Attorney, Joshua L. Rogers, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

RICHARDSON, Circuit Judge:

After defendant Joel Covington's allocution, but before his attorney argued at his sentencing hearing, the district court forecast that the minimum sentence Covington would receive was 60 months in prison—his crime's statutory max. Covington's attorney then advocated for a lower sentence. The court was unconvinced and imposed a 60-month sentence, which Covington asks us to vacate. He claims it was procedurally unreasonable for the court to state his term of imprisonment before his attorney argued. Because he did not make this argument to the district court, we review it for plain error. We find none. Covington also says that his sentence is procedurally unreasonable because it was not adequately explained and was based on an incorrectly calculated guidelines range. We disagree. Finding no reversible error in Covington's sentence, we affirm.

## I.      Background

Covington escaped from federal custody. At the time, he was being held at a residential re-entry center—colloquially known as a halfway house. He was at the tail end of a nearly twelve-year sentence for armed robbery, due to be released in two months. The night of his escape, staff discovered he had been drinking in violation of the center's policy. So, in the wee hours of the morning, he gathered his things and left without permission. When he did not return, authorities issued an arrest warrant.

Authorities arrested Covington roughly a month later, after which he pleaded guilty to escaping from custody, in violation of 18 U.S.C. § 751(a). At his arraignment hearing (and in the presentence report), the government detailed his eventful arrest. Law enforcement approached Covington at a liquor store in Fayetteville, North Carolina. He

2

then fled the scene in his car, caused a three-car accident, jumped out of the car, and tried to forcefully steal two occupied cars in separate fast-food restaurant drive-thru lanes. Officers apprehended him at gunpoint as he was forcing his way into the second car.

Covington's revised presentence report recommended an imprisonment range of 30 to 37 months. The probation office rejected Covington's argument that he was eligible for a 4-level sentence reduction under U.S.S.G. § 2P1.1(b)(3). That reduction applies when the escape from custody is from a "halfway house," so long as the defendant does not commit any offenses "punishable by a term of imprisonment of one year or more" while on the run. U.S.S.G. § 2P1.1(b)(3). The report found § 2P1.1(b)(3)'s reduction did not apply because Covington "attempted to carjack" two victims and was charged "accordingly" with disqualifying North Carolina crimes: attempted common law robbery and felonious restraint. J.A. 65.[1]

Covington's sentencing hearing began with a colloquy between himself and the district court. Although he said he was too intoxicated that day to "really recall what happened," Covington recounted fleeing from police in a car and getting in an accident. J.A. 23. He told the court that he struggled with alcohol addiction and explained how that addiction led to this crime. Covington also confessed embarrassment at being back in front of the same judge who had sentenced him in 2011 for armed robbery of a liquor store. The district court suggested that Covington himself was to blame for not seeking treatment for

---

[1] Along with his § 2P1.1(b)(3) objection, Covington objected to an enhancement under § 2P1.1(b)(1) (5-level enhancement for using or threatening force). Based on these guidelines objections, he calculated a total offense level of 9 rather than probation's 17.

3

his alcohol addiction. Covington agreed. The court also described the harm Covington caused and how much worse it could have been.

The district court then turned to the government. The court questioned the low guideline range given the severity of Covington's conduct. The government pointed to the low base-offense level for escape. It then described Covington's conduct in detail to acknowledge that Covington committed additional offenses related to carjacking. The government's attorney explained that after crashing his vehicle, Covington jumped in the back of a woman's car and ordered her to drive. When she did not, he pulled her out and threw her against a wall. He then ran to another car and threatened to shoot the occupant while bashing on the window. He stopped only when an officer arrived and subdued him. After hearing this account, the court stated:

> Well, the minimum sentence you're going to get is 60 months. I mean, there's no way, under the circumstances of the violent and reckless and public danger, that you don't deserve five years for this crime. Just isn't any way. And the 3553(a) factors, putting aside the modest Guideline, cry out for a sentence of the full statutory amount. I'm making a record here for the Court of Appeals to review, but there's nothing about this that warrants leniency. It is going to the threat and danger of the community kind of crime and that's my record. I'm going to upwardly depart and vary to the . . . statutory maximum of 60 months.

J.A. 28.

Afterward, the district court heard from Covington's attorney. Until then, the defense attorney had not argued. The court told him to "go ahead and make your record." J.A. 28. The court also told the defense attorney that he would "take into account and deliberate on every one of your arguments." J.A. 29. The defense attorney then made several arguments for a lower guideline range and lower sentence. He first re-raised the

4

objections—previously raised to the revised presentence report—that it was inappropriate to apply a § 2P1.1(b)(1) sentence enhancement and that the correct guidelines range was lower. He then echoed the assertions that Covington's untreated alcoholism supported a lower sentence.

The court responded, saying: "I've listened deliberately to each and every word that you've said . . . and I find that absolutely none of it is convincing and that it is at variance with the reality of this case." J.A. 31. The government then argued against Covington's guidelines objections. After adopting and agreeing with the government's counterarguments, the district court elaborated on its reasons for selecting the sentence, explaining how the § 3553(a) sentencing factors applied to Covington. It then orally imposed a 60-month sentence. Judgment reflecting that sentence and adopting the revised presentence report without change was entered the same day.

## II.    Discussion

Covington says that his sentence should be vacated for three reasons: his sentence was announced before his attorney argued, the district court inadequately addressed his alcoholism, and his guidelines were miscalculated because he was entitled to the § 2P1.1(b)(3) sentence reduction. We disagree on all counts. So we affirm Covington's sentence.

### A.    The District Court Did Not Plainly Err When Discussing the Sentence.

Covington claims that his sentence should be vacated as procedurally unreasonable because his attorney argued only after the district court imposed his sentence. To address his claim, we must first determine the standard of review. An unpreserved objection is

reviewed only for plain error. *United States v. Elbaz*, 52 F.4th 593, 611 (4th Cir. 2022). To preserve an objection at sentencing, a defendant must raise the issue to the district court "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)).

Covington asserts that he preserved this objection—and an objection to all procedural errors—by arguing below for a lower sentence based on the § 3553(a) factors and an allegedly miscalculated guidelines range. But a general objection to sentence length does not preserve a specific allegation of error unless the "context makes the finer, more-specific [objection] obvious." *United States v. Boyd*, 5 F.4th 550, 556 (4th Cir. 2021); *see also United States v. Lynn*, 592 F.3d 572, 578 (4th Cir. 2010) (explaining that arguing for a lower sentence based on § 3553(a) factors "sufficiently alerts the district court" that it needs to explain a higher sentence). And "lodging one specific claim of procedural sentencing error before the district court . . . does not preserve for appeal a different claim of procedural sentencing error." *Lynn*, 592 F.3d at 579 n.4.

So Covington's general pursuit of a shorter sentence and specific objection to his guidelines calculation did not, as *Boyd* requires, make it obvious that he also objected to the way his sentencing hearing unfolded. *See Elbaz*, 52 F.4th at 612 n.18 ("When the defendant raises no argument applicable to the supervised release condition, they are not saved just because they raised *some* type of argument against the sentence length."). He has therefore not preserved this argument for appeal, and we review it only for plain error. *See United States v. Engle*, 676 F.3d 405, 424 (4th Cir. 2012) (reviewing for plain error an unpreserved objection that defendant's sentence was imposed before allocution); *United*

*States v. Cole*, 27 F.3d 996, 998 (4th Cir. 1994) (same); *United States v. Lewis*, 10 F.3d 1086, 1092 (4th Cir. 1993) (same).

To find plain error, four things must be true:  there must (1) be an error, that is (2) "clear or obvious, rather than subject to reasonable dispute," that (3) affected the outcome at the district court, and that (4) "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (cleaned up); *see also United States v. Heyward*, 42 F.4th 460, 465 (4th Cir. 2022). "Satisfying all four prongs of the plain-error test 'is difficult.'" *Greer v. United States*, 141 S. Ct. 2090, 2097 (2021) (quoting *Puckett*, 556 U.S. at 135).

Rule 32 of the Federal Rules of Criminal Procedure undergirds Covington's argument.  That rule requires a district court to "provide the defendant's attorney an opportunity to speak on the defendant's behalf" before "imposing" a sentence.  Fed. R. Crim. Pro. 32(i)(4)(A)(i).  Covington argues the district court violated this requirement by saying it was "going to upwardly depart and vary to the . . . statutory maximum of 60 months" before providing his attorney the opportunity to speak.  J.A. 28.  There is no question the statement was made before Covington's attorney spoke.  So the statement may contravene Rule 32 if it amounts to "imposing" a sentence.

But it is not "clear or obvious," *Puckett*, 556 U.S. at 135, that this statement amounts to imposing—rather than merely discussing—a sentence.  To start, we have not precisely defined when a sentence is orally imposed during a sentencing hearing.  *Compare United States v. Brunson*, 968 F.3d 325, 335 (4th Cir. 2020) ("[A] sentence is 'imposed' when it is pronounced by the sentencing court."), *with Engle*, 676 F.3d at 425 (explaining a district

7

court did not impose a sentence when it "stated" what it felt the "appropriate sentence" would be).[2]  But there's good reason to think the district court's statement does not amount to imposing a sentence.  The statement does not carry typical hallmarks of a sentence.  Ordinarily a sentence is imposed in a formal oral pronouncement.  *See United States v. Rogers*, 961 F.3d 291, 296 (4th Cir. 2020); *United States v. Layman*, 116 F.3d 105, 108 (4th Cir. 1997).  It also generally addresses the other aspects of the sentence:  the conditions of supervised release, a fine, and the special assessment.  *See Rogers*, 961 F.3d at 296–98; *Cole*, 27 F.3d at 998.  These indicators are absent from the district court's initial discussion of Covington's imprisonment length.

And a judge may stop short of formal imposition and discuss an intended sentence at any point in the proceeding.  "Sentencing is 'a fluid and dynamic process.'" *Irizarry v. United States*, 553 U.S. 708, 715 (2008) (quoting *United States v. Vega-Santiago*, 519 F.3d 1, 4 (1st Cir. 2008) (en banc)).  An active judge can help that process.  After all, a defense attorney's right to be heard can have the most value when she knows what the judge is contemplating.  *See Burns v. United States*, 501 U.S. 129, 136 (1991) (noting that the right to comment upon a sentencing departure "has little reality or worth unless one is informed that a decision is contemplated" (cleaned up)).  By expressing its views, asking questions,

---

[2] The Benchbook for U.S. District Court Judges describes a multi-step process for sentencing.  At the end, it includes a "pronouncement" of the sentence that addresses the term of imprisonment and precedes the formal "imposition" of the sentence, which includes the term of imprisonment along with any conditions of supervised release, fine, restitution, forfeiture, and special assessment.  Benchbook for U.S. District Court Judges § 4.01 (6th ed. 2013).  We typically do not distinguish between the two:  "a sentence is 'imposed' when it is pronounced by the sentencing court."  *Brunson*, 968 F.3d at 335.

8

and making comments, a good judge helps counsel understand, and thus address, the court's concerns.[3]  Such a judge is well-advised to make plain that its assessment is tentative.  For the judge should "withhold her final judgment until after the parties have had a full opportunity to present their evidence and their arguments." *Irizarry*, 553 U.S. at 715.  But nothing mandates that the district court avoid discussing its views during the hearing.

When might expressing those views cross the line between discussing and imposing a sentence?  That line remains somewhat murky, but our caselaw suggests the district court's initial statement about the appropriate sentence was not plainly imposing Covington's sentence.  We have explained that we will generally assume a judge's discussion of the appropriate term of imprisonment during the sentencing hearing is tentative, not a final imposition of the sentence.  *Engle*, 676 F.3d at 425 ("'When a judge announces a sentence before hearing an allocution, it is fair to assume that such a sentence is tentative and that the judge will consider the defendant's statements before imposing a

---

[3] Consider a sympathetic defendant facing a mandatory minimum of ten years. Having reviewed the materials before the hearing, a good judge might begin the hearing by indicating that the § 3553(a) factors suggested no obvious reason to impose a sentence above that statutory minimum.  In doing so, the judge is providing counsel with helpful information.  Should the government's counsel agree, then defense counsel might wisely choose to do nothing for fear of snatching defeat from the jaws of victory (that is, the lowest sentence available to the defendant).  And should the government counsel disagree, his argument would be better tailored to convincing the judge that the statutory minimum was not sufficient.

Of course, that is not this case.  In this case, the statutory *maximum* was in play. And a defendant's interest differs when a court is considering the statutory maximum rather than the minimum.  The point is only that a judge can sometimes help the parties by providing its tentative views.

9

final sentence.'" (cleaned up) (quoting *United States v. Burgos-Andujar*, 275 F.3d 23, 30 (1st Cir. 2001))). In *Engle*, the district court resolved the parties' objections and variance requests and revealed its view that 480 months was the reasonable sentence, declaring anything less unprotective of the public. *Id.* at 424–25. Only then did the court permit the defendant to speak as required by Rule 32(i)(4)(A)(ii). But we still held that the sentence's imposition followed the defendant's statement. Despite the district court's earlier comments about the appropriate sentence, nothing in the record "establish[ed] that the court did not consider Engle's comments before finally imposing sentence." *Id.* at 425. So we rejected the claim that "when the district court announced its intention to vary upward to 480 months, it effectively imposed the sentence." *Id.*

Following *Engle*, we hold that the district court did not obviously impose a premature sentence here.[4] The court's initial discussion of Covington's imprisonment length mirrors the statements reviewed in *Engle*. And—as in *Engle*—it was only after hearing from the defense counsel (or, in *Engle*, the defendant) and covering the § 3553(a) factors that the court said, "So the Court *imposes* . . . a sentence of 60 months . . . ." J.A.

---

[4] *Engle* addressed Rule 32(i)(4)(A)(ii)'s command that the *defendant* be allowed to speak before the sentence is imposed. And the rule in this case, Rule 32(i)(4)(A)(i), requires the defendant's *attorney* speak before the sentence is imposed. But, in this context, this is a distinction without a difference. The ultimate question is whether the required parties all spoke before the sentence was imposed. And "imposed" as used in Rule 32(i)(4)(A) cannot mean different things for different subsections. So it means the same thing here that it meant in *Engle*. *See United States v. Gutierrez*, 555 F.3d 105, 110 (2d Cir. 2009) ("Because defendant's personal allocution and defense counsel's argument on the defendant's behalf serve essentially the same purpose at a sentencing hearing . . . the same standards should govern the omission of allowing either to speak.").

36 (emphasis added).[5]   We thus conclude that the district court did not plainly err by discussing during the sentencing hearing—and before all Rule 32 requirements were complete—what it believed the appropriate sentence should be.  *See Engle*, 676 F.3d at 425–26.

Covington's fallback position is that even if the sentence were not "imposed," the district court had made up its mind before his attorney spoke.  He says federal sentencing procedure exists to ensure "thorough adversarial testing" and the district court's timing when expressing its views on the appropriate sentence undermined this process.  *See Rita v. United States*, 551 U.S. 338, 351 (2007).  He thinks that the district court did not consider any of his attorney's arguments because his attorney did not speak at the hearing before the court first discussed his imprisonment term.  So, according to Covington, the court gave short shrift to adversarial testing, breaching the spirit of Rule 32 (i)(4)(A)(i) even if adhering to its letter.

But federal judges have a duty to enforce the letter of the law—not whatever parties would have us assume is its spirit.  And, even if we could apply a vague "adversarial testing" standard here, the district court did not "obviously" violate it.  So there is still no plain error.  *See Puckett*, 556 U.S. at 135.  It is simply untrue that the district court did not consider Covington's arguments.  Covington reaches the opposite conclusion by isolating the sentencing hearing, taking it out of context, and analyzing it without reference to

---

[5] To be clear, we are not requiring district courts use the magic word "impose" when imposing a sentence.  But the fact that the court overtly signaled when it was imposing the sentence is evidence that its earlier discussion of Covington's prison term—which did not use this language—was merely tentative.

11

everything that came before it.  Yet the dynamic sentencing process does not begin with the hearing.  Sentencing is the culmination of a district court's involvement in a case, not the starting point.  We cannot pretend that judges go into a sentencing hearing as blank slates.

Covington's process illustrates this.  Before the hearing, the district court had interacted with Covington multiple times.  The court had sentenced Covington for an armed robbery of a liquor store more than ten years earlier.  At that sentencing, the defense argued for leniency, relying on Covington's acceptance of responsibility, alcoholism, and childhood hardships.  And on this escape charge, Covington appeared before the district court—with his attorney—to be arraigned and to plead guilty.  During that hearing, the government described Covington's escape and arrest.  The district court later received the revised presentence report.  This report was prepared by the probation office and revised following Covington's attorney's objections.  The revised report was comprehensive, detailing:  Covington's offense; his history of alcoholism and difficult upbringing; why denying a § 2P1.1(b)(3) reduction and applying a § 2P1.1(b)(1) enhancement was appropriate; the proposed guidelines range (including an acceptance of responsibility sentence reduction); defense counsel's objections; and the government's rebuttals to those objections.  And that is not all.  At the sentencing hearing, before the district court stated the intended sentence, Covington beseeched the court to consider his remorse, acceptance of responsibility, and untreated alcoholism.

So the district court was already familiar with each argument the defense attorney raised at the sentencing hearing *before* it mentioned Covington's imprisonment length and

before the defense attorney spoke.  At the hearing, the attorney made three arguments: (1) § 2P1.1(b)(1) should not apply; (2) the guidelines were miscalculated; and (3) Covington suffered from untreated alcoholism and a difficult childhood.  These points had been raised several times before the sentencing hearing.  Still the court reconsidered them after the attorney spoke.  J.A. 31 ("I've listened deliberately to each and every word that you've said on his behalf . . . .").  All of this suggests that Covington's sentence received "thorough adversarial testing."  *See Rita*, 551 U.S. at 351.  And we therefore cannot find plain error.[6]

## B.      The District Court Adequately Addressed Covington's Alcoholism.

Covington's next argument is that his sentence is procedurally unreasonable because the district court did not adequately address his argument that his alcoholism justified a lower sentence.  A sentence is procedurally reasonable when, among other things, "a court's overarching explanation of a sentence as a whole . . . offer[s] enough of an explanation to satisfy us that it has considered the parties' arguments and has a reasoned basis for exercising its own legal decision-making authority."  *Boyd*, 5 F.4th at 559 (cleaned

---

[6] Covington also claims his defense attorney's delayed argument deprived him of due process.  It did not.  A defendant has a due process "interest in a sentencing proceeding that is fundamentally fair."  *Betterman v. Montana*, 578 U.S. 437, 448 (2016).  Assuming that Covington is correct that fundamental fairness includes being sentenced by a judge who "give[s] meaningful consideration to the presentence report and to objections raised at the sentencing hearing," *United States v. Pless*, 982 F.2d 1118, 1129 (7th Cir. 1992), the district court here did both.  Covington does not allege that the court failed to meaningfully consider his presentence report.  And the court heard and deliberated on defense counsel's objections at the sentencing hearing.  *See* J.A. 29 (promising to "take into account and deliberate on every one of [defense counsel's] arguments").  So Covington's due process argument fails.

13

up); *see also United States v. Arbaugh*, 951 F.3d 167, 174 (4th Cir. 2020). "We will not vacate [a] sentence simply because the court did not spell out what the context of its explanation made patently obvious." *United States v. Montes-Pineda*, 445 F.3d 375, 381 (4th Cir. 2006).

The district court offered enough explanation to satisfy us that it considered Covington's alcohol addiction argument and had a reasoned basis for the sentence it imposed. Covington and his defense counsel argued at sentencing that Covington's untreated alcohol addiction contributed to his crime and warranted a lighter sentence. In response, the district court suggested that it was Covington's own fault that he had not sought treatment for his addiction. The district court then discussed the nature of Covington's offense, the impact Covington's actions had on his victims, and the danger Covington posed to the public. The record as a whole shows the district court's rationale for discounting Covington's argument and why the court thought the § 3553(a) factors outweighed it. So we reject Covington's argument that the sentence was inadequately explained and thus procedurally unreasonable. *See Boyd*, 5 F.4th at 559.

### C.    The District Court Did Not Err by Denying the Sentence Reduction.

Covington argues that the district court miscalculated his recommended guidelines range because it denied Covington a sentence reduction under U.S.S.G. § 2P1.1(b)(3). Under this provision, a defendant convicted of escape from custody receives a four-level reduction if their escape was from a "non-secure" facility, like a halfway house. *See* U.S.S.G. § 2P1.1(b)(3). Yet they are ineligible for that reduction if they, "while away from the facility, committed any federal, state, or local offense punishable by a term of

14

imprisonment of one year or more." *Id.* According to Covington, he is entitled to the reduction because he escaped from a qualifying facility and there is not enough evidence to find that he committed a disqualifying offense.

Applying § 2P1.1(b)(3) involves questions of law and fact. Here it primarily presents the factual question of whether there is sufficient evidence that Covington actually committed a disqualifying offense. *See United States v. Strachan*, 968 F.2d 1161, 1163 (11th Cir. 1992). So we review the district court's determination that he did for clear error. *See United States v. Adepoju*, 756 F.3d 250, 256 (4th Cir. 2014). We will not reverse the district court's finding if it "is plausible in light of the record viewed in its entirety." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985); *see also Walsh v. Vinoskey*, 19 F.4th 672, 677 (4th Cir. 2021).

Covington contends that there was insufficient evidence to show he committed attempted common law robbery—or any other disqualifying offense.[7] Under North Carolina law, attempted common law robbery is punishable by more than one year. N.C. Gen. Stat. §§ 14-2.5, 14-87.1, 15A-1340.17.[8] It has two elements: (1) specific intent to use

---

[7] Covington also protests that the district court did not expressly find he committed attempted common-law robbery. So he argues that we cannot decide whether he committed this crime in the first instance. But when Covington objected to the presentencing report, claiming he should have received a § 2P1.1(b)(3) reduction, the government responded by citing to his pending attempted common-law robbery charges. The district court then agreed with the government's rationale for denying Covington's objection. And it adopted the presentence report without change. We therefore can review the determination that Covington committed this crime.

[8] Section 14-87.1 provides that common law robbery is a Class G felony. § 14-2.5 says that attempt to commit a felony is "punishable under the next lower classification as (Continued)

15

violence or fear to feloniously and non-consensually take personal property from another's person; and (2) "a direct but ineffectual act by defendant leading toward" such a taking. *See State v. Whitaker*, 296 S.E.2d 273, 274 (N.C. 1982); *State v. Bell*, 603 S.E.2d 93, 117 (N.C. 2004) (describing common law robbery). Covington says that the record does not plausibly establish these elements.

He is wrong. There is enough evidence to reasonably conclude that Covington committed attempted common law robbery. The record shows that he got into the backseat of another's car, threatened the owner, pulled her out of the car, tried to drive away, and slammed her head into a wall when she tried to stop him. Despite this aggression, Covington failed to take her car. So it is plausible to find that Covington used violence and fear to ineffectually attempt to take the personal property of another. *See Bell*, 603 S.E.2d at 117. And his "combination of speech and action" is "overwhelming evidence" of his specific intent to do so. *See Whitaker*, 296 S.E.2d at 275. Since the court could reasonably conclude from the record that Covington's activity on the day of his arrest satisfied each element of attempted common law robbery, it did not clearly err by finding Covington committed a disqualifying offense. *See Vinoskey*, 19 F.4th at 677.[9]

_____

the offense which the offender attempted to commit." So attempted common law robbery would be punished as a Class H felony, and has a maximum authorized term of imprisonment of over 12 months. *See* § 15A-1340.17 (c)–(d).

[9] Covington's primary objection to this conclusion is that he lacked the specific intent to commit the crime because he was too intoxicated. In North Carolina, defendants who provide substantial evidence that they were "so severely intoxicated, beyond mere inebriation, that [they were] incapable of comprehending [their] surroundings or acting on [their] own" can negate specific intent. *State v. Meader*, 838 S.E.2d 643, 646 (N.C. Ct. (Continued)

16

\*            \*            \*

"A judge will normally be well-advised to withhold her final judgment until after the parties have had a full opportunity to present their evidence and their arguments." *Irizarry*, 553 U.S. at 715 (cleaned up). But good judges do their homework. They do not come to a sentencing hearing as a blank slate. And when no new arguments are presented during the proceeding, it is unsurprising if judges eventually act in line with their earlier leanings. Here, the district court reviewed the presentence report, listened to Covington's allocution, discussed the appropriate term of imprisonment for Covington, then heard from Covington's lawyer, and eventually imposed the previously mentioned term of imprisonment as part of the formal sentence. It is not obvious that this order of events was an error. And since the court also adequately explained Covington's sentence and calculated his guideline range, we find no reversible error in his sentence. The district court's decision is thus

*AFFIRMED.*

---

App. 2020), *aff'd*, 856 S.E.2d 533 (N.C. 2021). But Covington's brief statement at sentencing that he "can barely remember what happened and [ ] was drunk," J.A. 23, does not meet this standard.

17