**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-4618

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

   v.

GILBERT DEVON MELVIN, a/k/a G-Boy,

        Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:98-CR-00037-BO-14)

Argued:  May 7, 2024                                    Decided:  June 26, 2024

Before NIEMEYER and THACKER, Circuit Judges, and MOTZ, Senior Circuit Judge.

Affirmed by published opinion.  Judge Motz wrote the opinion, in which Judge Niemeyer and Judge Thacker joined.

**ARGUED:**  Jennifer Claire Leisten, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Charles Edward Loeser, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:**  G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

DIANA GRIBBON MOTZ, Senior Circuit Judge:

In March 2021, following more than 20 years of incarceration, Gilbert Devon Melvin was released from federal prison and began a five-year term of supervised release. In August 2023, Melvin's mental health deteriorated, and he was arrested for trespassing. At the revocation hearing that followed, the district court initially agreed to terminate Melvin's supervised release and enter a time-served sentence. But before the hearing concluded, Melvin engaged in what the court viewed as "one of the worst outbursts [it had] ever seen in an open courtroom." J.A. 97.[1] The district court immediately concluded that Melvin's outburst indicated he posed a danger to the public and to his probation officers. Accordingly, the court withdrew its initial agreement to a time-served sentence and instead elected to maintain Melvin's supervised release with an additional mental health condition. On appeal, Melvin contends that the district court lacked authority to withdraw or modify the time-served sentence it had initially agreed to impose. *See* 18 U.S.C. § 3582(c). For the reasons that follow, we disagree, and so affirm.

I.

In 1998, a jury convicted Gilbert Melvin of three drug and firearm offenses relating to his involvement in a lengthy drug distribution conspiracy that implicated 19 other co-defendants. The district court sentenced Melvin to life plus 300 months' imprisonment, followed by a five-year term of supervised release. Melvin remained incarcerated for the

---

[1] Citations to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.

next 21 years.  But, in July 2020, the district court granted Melvin's motion for sentence reduction under the First Step Act,[2] and resentenced him to 306 months.

In March 2021, Melvin was released from prison.  He began his five-year supervised release term in Fayetteville, North Carolina, where he received an apartment, a stipend, and psychiatric services.  For roughly two and a half years, he remained on supervised release without incident or infraction.

In August 2023, Melvin suffered a lapse in his medication, and began to experience worsening psychiatric symptoms, including clinical paranoia and panic attacks.  On August 16, a probation officer moved to revoke Melvin's supervised release, alleging Melvin had committed misdemeanor larceny in Fayetteville four days earlier.  (Melvin asserts that he "believed he would be safer in jail," and sought to provoke his own arrest.  Def.'s Br. 3.)  The district court issued an arrest warrant, and on August 22, the United States Marshals arrested Melvin and transported him to Raleigh.  But state prosecutors dropped the larceny charge, and the district court recalled the warrant the following day.

Melvin claims the Marshals released him in Raleigh — and provided no way for him to return to Fayetteville, and no access to his psychiatric medication.  Five days later, on August 28, 2023, Melvin contacted his probation officer and stated that "he did not want to be under supervision any longer and wished to address the matter with the Court."  J.A.88.  That same day, Melvin was cited for misdemeanor trespassing after refusing to leave a bus station in Raleigh.  The probation officer again moved to revoke Melvin's

---

[2] The district judge who granted Melvin's First Step Act motion presided over all subsequent matters in Melvin's case.

3

supervised release, and Melvin was arrested the following day. Melvin remained in federal custody for a month, and claims he received no psychiatric medication during this time.

On September 28, 2023, the district court held a revocation hearing. All parties involved — the Government, the probation officer, and Melvin — recommended terminating supervision and issuing a time-served sentence. The court initially stated that it would agree to this proposal. But moments later, Melvin asked to address the court, which the court allowed him to do, and for five minutes, Melvin engaged in what he calls a "stream-of-consciousness outburst." Repl. Br. 9–10. During this outburst, Melvin claimed that the probation officers were "trying to silence [his] voice by giving [him] this plea." J.A. 92. He accused those same officers of taking away his home, his job, and his property, interfering with his psychiatric treatment, and stranding him in another city with no means to return home. He also asserted that he hoped the officers would be "called on" for what they had done. J.A. 95.

When Melvin concluded his statement, the judge stated that he would "withdraw [his] previous rulings." J.A. 95. Concluding that Melvin was "a danger to the law and to law enforcement and to the probation [officers]," the court remanded Melvin into custody, and ordered a recess until the afternoon. J.A. 95–97. Five hours later, that same afternoon, the hearing resumed. The court first proposed a prison sentence of several months, but the prosecutor explained that Melvin was experiencing profound mental health issues, and suggested that treatment would be more effective than incarceration. Following brief argument, the court agreed to maintain Melvin's supervised release, but added a condition requiring him to follow a mental health treatment program, and ordered him committed to

4

a psychiatric hospital. The hearing ended, and the court issued a written order memorializing Melvin's sentence that same day.

The following day, the district court held a status conference with the prosecutor and Melvin's attorney. Melvin's attorney confirmed that Melvin had been committed to Holly Hill Psychiatric Hospital for a three-day involuntary hold followed by voluntary inpatient treatment, and long-term outpatient care. The court offered to "leave the supervised release as is . . . and see if he can perform adequately in the future." J.A. 112–13. The parties agreed, and the conference concluded.

Melvin filed his notice of appeal four days later, on October 3, 2023.

## II.

Melvin argues that the district court was bound to sentence him in accordance with its initial announcement that it would "agree to . . . time served and the termination of his supervision." J.A. 91. Melvin maintains that a sentence becomes final and binding the moment it is announced in open court — and that the court had no authority to withdraw the time-served sentence it had initially accepted before Melvin's outburst.

## A.

Federal law places paramount importance on the finality of criminal proceedings, and permits courts to modify sentences only in limited circumstances. Pursuant to 18 U.S.C. § 3582, a court generally may not modify a sentence "once it has been imposed." 18 U.S.C. § 3582(c). As a narrow exception, Section 3582 permits the sentencing court to adjust a sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure. *See*

5

18 U.S.C. § 3582(c)(1)(B). That rule allows the court to "correct a sentence that resulted from arithmetical, technical or other clear error" within "14 days after sentencing." Fed. R. Crim. P. 35(a).[3] But Rule 35(a) does not authorize the court "to reconsider the application or interpretation of the sentencing guidelines or . . . simply to change its mind about the appropriateness of the sentence." *United States v. Layman*, 116 F.3d 105, 108 (4th Cir. 1997) (cleaned up). Thus, "[w]hen the district court unequivocally states a sentence and then *imposes* it, and the sentence is not the product of error, the district court has no authority to alter that sentence." *United States v. Fields*, 552 F.3d 401, 405 (4th Cir. 2009) (quoting *United States v. Fraley*, 988 F.2d 4, 7 (4th Cir. 1993)) (emphasis added).

The parties dispute when a sentence is considered "imposed," restricting the court's authority to modify or withdraw it.[4] At minimum, we have held that courts cannot modify a sentence after the sentencing hearing has concluded unless Rule 35, or another exception, applies. *See, e.g.*, *id.* at 403, 405 (court reconsidered sentence four days later); *Fraley*, 988 F.2d at 5 (court altered sentence several months later); *United States v. Williams*, 664 F.

---

[3] Rule 35(b) permits the court to adjust a sentence at a later date if the defendant renders substantial assistance in the investigation or prosecution of another person. Fed. R. Crim. P. 35(b). No party argues that this provision applies here.

[4] The parties discuss this issue in jurisdictional terms, but it is not clear that Section 3582 is a jurisdictional rule. After all, "Section 3582(c) . . . neither speaks in jurisdictional terms nor refers in any way to the jurisdiction of the courts." *United States v. Muhammad*, 16 F.4th 126, 129–30 (4th Cir. 2021) (cleaned up); *accord United States v. May*, 855 F.3d 271, 275 (4th Cir. 2017) (observing that Congress must "'clearly state[] that a threshold limitation on a statute's scope shall count as jurisdictional' before a court can treat the limitation as such" (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006) (alteration in original)). But we need not resolve that question today. For present purposes, it suffices to note that Section 3582 prohibits courts from modifying a previously imposed sentence, with only narrow exceptions not applicable here.

6

App'x 316, 320 (4th Cir. 2016) (per curiam) (court modified sentence "six days later").

After all, defendants, courts, and the public have a strong interest in the transparency and

finality of criminal proceedings. *See Fields*, 552 F.3d at 405. Permitting a sentencing court

to simply "change its mind" days, weeks, or months *after* a sentence is imposed and the

sentencing hearing has ended would thwart those expectations. *Layman*, 116 F.3d at 108–

09; *United States v. Cook*, 890 F.2d 672, 674–65 (4th Cir. 1989).

But "we have not precisely defined when a sentence is orally imposed *during* a

sentencing hearing." *United States v. Covington*, 65 F.4th 726, 731 (4th Cir. 2023)

(emphasis added). Our sister circuits have embraced a pragmatic rule, holding that

Section 3582(c) does not "deprive the district court of [authority] to alter a sentence *during*

*the course* of the same hearing." *See United States v. Ochoa*, 809 F.3d 453, 458 (9th Cir.

2015). Under this approach, a sentence announced in open court is not "imposed" until

there has been a "formal break in the proceedings from which to logically and reasonably

conclude that sentencing [has] finished." *Id.* (quoting *United States v. Gerezano-Rosales*,

692 F.3d 393, 397 (5th Cir. 2012)); *accord United States v. Luna-Acosta*, 715 F.3d 860,

865 (10th Cir. 2013); *United States v. Meza*, 620 F.3d 505, 509 (5th Cir. 2010).

This approach aligns with our caselaw. Because "sentencing is a fluid and dynamic

process," we have hesitated to bind courts to statements made before a sentencing hearing

has concluded. *See Covington*, 65 F.4th at 731 (cleaned up); *United States v. Engle*, 676

F.3d 405, 424 (4th Cir. 2012). For example, in both *Covington* and *Engle*, appellants

argued that the sentencing court had prematurely imposed a sentence before fulfilling

Rule 32's pre-sentencing requirements. *Covington*, 65 F.4th at 729 (court stated sentence

7

before defense counsel spoke); *Engle*, 676 F.3d at 424–25 (court stated sentence before defendant's allocution). In both cases, we held that the district court's initial statements and projections were merely tentative, and did not "impose" a binding sentence. *See Covington*, 65 F.4th at 731; *Engle*, 676 F.3d at 425. And in so holding, we reasoned that "we will generally assume a judge's discussion of the appropriate term of imprisonment during the sentencing hearing is tentative, not a final imposition of the sentence," particularly when the defendant and his attorney have not been afforded an opportunity to speak. *See Covington*, 65 F.4th at 632 (quoting *Engle*, 676 F.3d at 425).

Of course, the line between a preliminary and final sentence "remains somewhat murky." *See Covington*, 65 F.4th at 732. But triggering Section 3582's limitations during an ongoing sentencing hearing — the instant the judge articulates a possible sentence — would "strip district courts of flexibility to respond to evolving circumstances during sentencing hearings." *Ochoa*, 809 F.3d at 458; *accord Meza*, 620 F.3d at 508 (rejecting rule that would "*instantaneously* strip[] the district court of its [authority] to sentence criminal defendants"). We note that such circumstances are quite common. Lawyers often object moments after a sentence is initially announced — disputing the advisory guidelines calculation, the weight of various sentencing factors, the application of an enhancement, or other issues that may arise. Prohibiting the sentencing court from responding to such objections would needlessly multiply proceedings. Conversely, treating a sentence as tentative until sentencing has concluded "provides the district court with an opportunity to correct [any potential] errors before, and perhaps in lieu of, appellate review." *Luna-Acosta*, 715 F.3d at 866.

8

Equally important, the defendant's behavior after the initial announcement of the sentence can reveal new information highly relevant to the 18 U.S.C. § 3553 sentencing factors. For this reason, our sister circuits have permitted courts to adjust a sentence in response to the defendant's statements or conduct before the sentencing hearing has concluded. *E.g.*, *Gerezano-Rosales*, 692 F.3d at 396 (defendant revealed for the first time that he could speak English, and took actions that "caused the court to question the veracity of some of [his] mitigating statements"); *United States v. Burgos-Andujar*, 275 F.3d 23, 27 (1st Cir. 2001) (defendant made remarks indicating "a lack of remorse, an attempt to avoid responsibility for her actions, and even a likelihood of repeating her illegal actions"); *Ochoa*, 809 F.3d at 456 (defendant laughed after being "lectured . . . about respect for the system").

This case is no different. Immediately after the district judge indicated that he would agree to a time-served sentence, Melvin engaged in a five-minute diatribe that he himself describes as a "stream-of-consciousness outburst" and an "emotional word salad." Repl. Br. 9–10. The court regarded that statement as "one of the worst outbursts [it had] ever seen in an open courtroom," leading it to believe that Melvin was "a danger to the law and to law enforcement." J.A. 96–97.[5] These concerns are highly relevant to the 18 U.S.C. § 3553(a) sentencing factors, which direct sentencing courts to consider "the history and

---

[5] Given the "difficulty in assessing tone and demeanor from a cold transcript" — and Melvin's description of his own conduct on appeal — we accept the district court's characterization of Melvin's statements. *See Gerezano-Rosales*, 692 F.3d at 400; *accord United States v. Murray*, 65 F.3d 1161, 1165–66 (4th Cir. 1995); *United States v. Harris*, 882 F.2d 902, 905 (4th Cir. 1989) (observing that the district court "is in a unique position" to assess a defendant's demeanor at sentencing).

characteristics of the defendant"; the need "to protect the public"; and the need "to provide the defendant with . . . medical care."  Prohibiting the district court from considering these issues would undermine the mandate that sentencing courts should consider "the fullest information possible concerning the defendant's life and characteristics" in fashioning a sentence.  *See Concepcion v. United States*, 597 U.S. 481, 493 (2022) (cleaned up); *Pepper v. United States*, 562 U.S. 476, 488 (2011) ("Permitting sentencing courts to consider the widest possible breadth of information about a defendant ensures that the punishment will suit not merely the offense but the individual defendant." (cleaned up)).

Accordingly, we join our sister circuits in holding that 18 U.S.C. § 3582 does not "deprive the district court of [authority] to alter a sentence during the course of the same [sentencing] hearing."  *See Ochoa*, 809 F.3d at 458.  Rather, a sentence becomes final and binding for Section 3582 purposes only once (1) it has been "unequivocally state[d]" in open court, *Fields*, 552 F.3d at 405 (cleaned up); and (2) there has been a "formal break in the proceedings from which to logically and reasonably conclude that sentencing had finished," *Luna-Acosta*, 715 F.3d at 865 (quoting *Meza*, 620 F.3d at 509).

Melvin maintains that Rule 35 of the Federal Rules of Criminal Procedure compels us to hold that a sentence is imposed the moment it is uttered.  His argument relies on Rule 35(c), which defines "sentencing" to mean "the oral announcement of the sentence." *See* Fed. R. Crim. P. 35(c).  But no part of Rule 35 defines when a sentence is imposed — nor prohibits district courts from adjusting a sentence during an ongoing sentencing hearing, as the court did here.

The bar against modifying a final sentence derives from 18 U.S.C. § 3582, not from Rule 35 of the Federal Rules of Criminal Procedure. Section 3582 generally prohibits district courts from modifying a sentence "once it has been imposed." 18 U.S.C. § 3582(c). As an exception to that general principle, the statute permits courts to modify sentences in the limited circumstances provided by Rule 35. *Id.* § 3582(c)(1)(B). And, as relevant here, Rule 35(a) creates a brief window for the district court to make technical or arithmetical corrections "[w]ithin 14 days after sentencing." Fed. R. Crim. P. 35(a). By defining the term "sentencing," Rule 35(c) merely clarifies that the time period to correct a sentence begins on the date the sentence is orally announced in court, rather than the date it is memorialized in a written judgment. *See* Fed. R. Crim. P. 35(c). Nowhere does Rule 35 define when a sentence is "imposed" for Section 3582 purposes — much less mandate that a sentence is imposed the moment it is uttered.

The history of Rule 35 confirms as much. Before 2004, Rule 35 stated that district courts may correct a sentence "within 7 days after the imposition of sentence." *See* Fed. R. Crim. P. 35(c) (2000). But the rule did not explain "whether 'imposition of sentence' refers to the time of oral pronouncement of the sentence, or the entry of written judgment." *United States v. Aguirre*, 214 F.3d 1122, 1125 (9th Cir. 2000). The circuits were divided, with a sizable majority holding that Rule 35 refers to the sentencing hearing, and a minority holding that the clock starts only when written judgment is entered. *Id.* (collecting cases). To resolve this split, the Advisory Committee amended Rule 35 in 2004 — replacing the term "imposition of sentence" with "sentencing," and adding Rule 35(c), "which defines sentencing for purposes of Rule 35 as the oral announcement of the sentence." *See* Fed. R.

11

Crim. P. 35 advisory committee's note to 2004 amendments. These revisions confirm that Rule 35(a) does not define when a sentence is "imposed" for Section 3582(c) purposes — and that Rule 35(c) merely clarifies the date on which the 14-day window for technical and arithmetical corrections opens.

### B.

In sum, a sentence is not imposed until it has been unequivocally pronounced during the sentencing hearing, and there has been a "formal break in the proceedings from which to logically and reasonably conclude that sentencing had finished." *Luna-Acosta*, 715 F.3d at 865 (cleaned up); *Fields*, 552 F.3d at 405. Applying this rule, we hold that the district court's initial acceptance of a time-served sentence was tentative — and that the court had authority to modify that sentence when Melvin addressed the bench only moments later, during the course of the same sentencing hearing.

It is clear from the record that there was no formal break between the court's initial announcement of the sentence and its retraction. The district court's withdrawal occurred in "the same hearing, on the same day, within moments of the original pronouncement." *Cf. Meza*, 620 F.3d at 508. Two minutes after the hearing began, and following a short colloquy with the parties, the court confirmed that it would "agree to . . . time served and the termination of [Melvin's] supervision." J.A. 91. Only moments later, Melvin sought permission to address the court, and the court allowed him to speak. He delivered what he himself describes as a "stream-of-consciousness outburst" and an "emotional word salad," Repl. Br. 9–10, prompting the district court to find him a danger to the public, "withdraw [its] previous rulings," J.A. 95, and ultimately impose Melvin's original supervised release

term, with an additional mental health condition.  This "unbroken sequence of actions" indicates that the initial sentence, Melvin's statement, and the court's retraction were all part of a single, continuous sentencing hearing.  *Cf. Meza*, 620 F.3d at 508.  Because we could not "logically and reasonably conclude that sentencing had finished" before Melvin's outburst, *Luna-Acosta*, 715 F.3d at 865 (cleaned up), the district court did not violate Section 3582 by retracting its initial agreement to a time-served sentence.[6]

III.

For the reasons set forth above, the district court's judgment is

*AFFIRMED.*

---

[6] Moreover, we note that "when a judge announces a sentence before hearing an allocution, it is fair to assume that such a sentence is tentative." *Engle*, 676 F.3d at 425 (quoting *Burgos-Andujar*, 275 F.3d at 30) (cleaned up).  That is because the Federal Rules of Criminal Procedure require sentencing courts to grant defendants an opportunity to make a statement before a sentence is imposed.  *See* Fed. R. Crim. P. 32(i)(4)(ii); Fed. R. Crim. P. 32.1(b)(2)(E).  Here, the court stated that it would agree to a time-served sentence and termination of supervised release only minutes into the hearing, and before hearing any allocution.  These facts further indicate that sentencing had not finished, and that the court retained authority to retract its preliminary agreement to a time-served sentence.